***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Holmes and enters the following Opinion and Award.
 *********** STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter. *Page 2 
2. On July 16, 2007, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Plaintiff alleges he sustained a compensable injury by accident on July 16, 2007.
5. An employment relationship existed between Plaintiff and the Employer-Defendant on and around July 16, 2007.
6. Travelers Indemnity Company was the carrier on the risk for the Defendant-Employer on July 16, 2007.
7. Plaintiff's average weekly wage was $309.19.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, Plaintiff was 54 years old. Plaintiff worked for Defendant-Employer, Triad Towing, Inc., as a tow truck driver. Plaintiff's duties included towing and impounding vehicles, jump starting vehicles, and assisting customers locked out of their vehicles.
2. On July 16, 2007, Plaintiff had an impound job at Ashland Apartment Complex. Plaintiff testified and the Commission finds as fact that there was nothing unusual about his performing an impound job in his work for Triad Towing. On this occasion, Plaintiff had to tow off a van from the parking lot because it had expired tags. The parking area was on a slight incline. *Page 3 
3. The wheels of the van were turned hard to the left and Plaintiff had difficulty getting the dolly bars under the van and under its wheels. It was not unusual for Plaintiff to have to position dollies when vehicles were in tight spots. Plaintiff did not think that the heavy work using dollies had anything to do with his shoulder injury.
4. While placing the dollies, Plaintiff was confronted by the vehicle's owner, but Plaintiff was able to make the vehicle owner understand that he had to continue with the tow.
5. After the confrontation, and while Plaintiff was pulling the subject vehicle to the back of the lot to turn it around, it seemed to him that the wheel on the driver's side of the vehicle starting dragging. Plaintiff stopped to put air in that tire. From time to time Plaintiff would encounter flat tires in his work as a tow truck driver and sometimes he would have to "rig them up with a block of wood to squeeze it in to where you can get your dolly bars under it," like he did that day. After filling the tire with air, Plaintiff continued backing up.
6. While backing, one of the dolly wheels went over a speed bump. As Plaintiff got closer to the road, that tire started dragging. Plaintiff stopped and exited his truck, looked at the tire and decided it needed air. Plaintiff went back to the driver's side of the truck, crawled in, and reached in with his left hand and grabbed the air compressor, which weighed approximately 20-25 pounds. As he was lifting the compressor, he felt some discomfort in his left shoulder. Plaintiff was in a hurry to get the vehicle moved, so he continued his work.
7. It took approximately ten minutes to fill the flat tire with air. In the meantime Plaintiff rested in the truck because it was air-conditioned. When the tire was inflated, he got out of the truck and attempted to shut the truck door. The truck door did not close because Plaintiff did not use enough force to shut it. The truck door did not jam or malfunction. *Page 4 
8. Plaintiff left the door open and checked on the tire and air machine; he saw that the tire was dry rotting. He noticed that cars were coming into the complex and going out of the complex, so he went back to the open door to shut it so that it would not be hit. Plaintiff slung the door as he was going back to turn off the air machine and experienced pain in his left shoulder.
9. Plaintiff's co-worker Travis Snead, testified that Plaintiff showed him how he was hurt on the day in question. Plaintiff demonstrated to Mr. Snead that he tried to shut the driver's side door of the tow truck with his right arm and his left arm popped.
10. Mr. Snead was asked to describe the incline at the apartment complex in question; he testified that it was a slight incline, consistent with Plaintiff's own description of the incline.
11. The Full Commission finds that the incline on which plaintiff was parked was very slight and that Plaintiff did not have to use extraordinary force to close the door considering the generally physical nature of Plaintiff's job.
12. Strenuous work was a normal part of Plaintiff's job. Dr. Matthew B. Martin noted on January 10, 2008 and February 9, 2007 that Plaintiff's job required him to perform strenuous physical labor.
13. Plaintiff was not required to use excessive or unexpected force in any regard on July 16, 2007, as compared with his work generally. The work Plaintiff did on July 16, 2007 involving his shoulder was not unusually strenuous.
14. The greater weight of the evidence shows that when Plaintiff was injured he was performing his normal job duties. It was not unusual for Plaintiff to open and shut the door of his truck many times in the course of his daily work, including the use of dollies. There was nothing unusual about Plaintiff's having to lift or use the air compressor to inflate tires. It was *Page 5 
not unusual to be confronted by the owners of the vehicle being towed or to have to park on an incline.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has the burden of proving that the injury complained of resulted from an injury by accident arising out of and in the course of the employment. Henry v. A.C. Lawrence Leather Co., 231 N.C. 477,57 S.E.2d 760 (1950). Plaintiff must show that the incident constituted an interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences. Adams v.Burlington Industries, Inc., 61 N.C. App. 258, 300 S.E.2d 455 (1983). An accident is an unlooked for and untoward event not expected or designed by the employee. An accident is not established by the mere fact of injury but is to be considered as a separate event preceding and causing the injury. No matter how great the injury, if it is caused by an event that involved both an employee's normal work routine and normal working conditions it will not be considered to have been caused by accident. Searsey v. Perry M. Alexander Construction Co.,35 N.C. App. 78, 239 S.E.2d 847. (1978).
3. Plaintiff has failed to prove by the greater weight of the evidence that he sustained a compensable injury by accident on July 16, 2007. N.C. Gen. Stat. § 97-2(6)
 *********** *Page 6 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Each party shall pay its own costs, except the Defendants shall pay an expert witness fee of $550.00 to Dr. David Olin and $550.00 to Dr. Robert Collins, if not paid by prior order.
This the 21st day of September 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
S/___________________ DIANNE C. SELLERS COMMISSIONER
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1